# Exhibit C

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE DOLLAR THRIFTY SHAREHOLDER ) Consolidated
LITIGATION ) C.A. No. 5458-VCS
)

- - -

Chancery Conference Room
New Castle County Courthouse
Wilmington, Delaware
Friday, July 9, 2010
1:00 p.m.

- - -

BEFORE: HON. LEO E. STRINE, JR., Vice Chancellor.

- - -

OFFICE CONFERENCE

- - -

CHANCERY COURT REPORTERS
500 North King Street - Suite 11400
Wilmington, Delaware 19801-3759
(302) 255-0525

```
 1   APPEARANCES:

 2           JOEL FRIEDLANDER, ESQ.
             Bouchard Margules & Friedlander, P.A.
 3                -and-
             MICHAEL J. BARRY, ESQ.
 4           Grant & Eisenhofer P.A.
                  -and-
 5           AMY MILLER, ESQ.
             of the New York Bar
 6           Bernstein Litowitz Berger & Grossman LLP
                  -and-
 7           MICHAEL C. WAGNER, ESQ.
             of the Pennsylvania Bar
 8           Barroway Topaz Kessler Meltzer & Check, LLP
               for the Plaintiffs
 9
             MATTHEW E. FISCHER, ESQ.
10           Potter Anderson & Corroon LLP
                  -and-
11           MITCHELL A. LOWENTHAL, ESQ.
             JENNIFER KENNEDY PARK, ESQ.
12           Cleary Gottlieb Steen & Hamilton LLP
               for Defendants Scott L. Thompson, Thomas P.
13             Capo, Maryann N. Keller, Edward C. Lumley,
               Richard W. Neu, John C. Pope and Dollar
14             Thrifty Automotive Group Inc.

15           RAYMOND J. DiCAMILLO, ESQ.
             KEVIN M. GALLAGHER, ESQ.
16           Richards, Layton & Finger, P.A.
                  -and-
17           JOSEPH P. MOODHE, ESQ.
             of the New York Bar
18           Debevoise & Plimpton LLP
               for Defendants Hertz Global Holdings, Inc.
19             and HDTMS, Inc.

20                       - - -

21

22

23

24
```

1	THE COURT: A lot of people for
2	something that is going to be brief. I understand you
3	have some sense that you are not going to have to do a
4	lot of talking, from a wise person. That's right.
5	I understand this is an awkward
6	situation for everyone involved. And I'm going to
7	deal with it in a supple way that -- where my mind is
8	going to stay open. My head is cool. My heart is
9	warm. But we are in a situation where the defendant
10	corporation -- you know, the directors believe that
11	this case ought to be handled in a court of the state
12	whose law governs the relationship between the
13	corporation and its stockholders.
14	That is what public investors bargain
15	for. The plaintiffs here, obviously, agree with that.
16	But there appear to be people who represent other
17	investors who want to have this suit decided in the
18	great state of Oklahoma, which is a wonderful place.
19	My brother-in-law makes his home there.
20	I respect Oklahoma greatly, but part
21	of what comes with comity is everyone respecting each
22	other. I'm going to ask the defendants and the
23	plaintiffs to provide me, tomorrow, with a statement
24	as to whether there is even such a thing as a

1  constituency statute in Oklahoma.  A majority of
2  American states have --
3                    MR. LOWENTHAL:  Sorry.
4                    THE COURT:  A majority of American
5  states have constituency statutes in their corporation
6  laws that specifically permit the board of directors,
7  in the context of a proposal for a business
8  acquisition, to consider the interests of
9  constituencies other than stockholders.  The states
10 vary.  Some of them say employees -- employees are
11 often one of the most common -- the communities, other
12 sorts of things.  I want -- I haven't really had the
13 chance to -- my understanding is Oklahoma may not even
14 have a constituency statute.  I think it would be
15 helpful.  You can copy the plaintiffs in Oklahoma, as
16 well, in communications, to know whether Oklahoma has
17 such a statute.
18                   When states adopt such statutes, they
19 do a very interesting thing.  They tend,
20 overwhelmingly -- I know of no exception to this -- to
21 respect centuries of American law.  The United States
22 Supreme Court has made clear in many decisions,
23 including those dealing, importantly, with
24 anti-takeover statutes in the 1980s -- that the

internal affairs of corporations are regulated by the chartering corporation, "the internal affairs" meaning, essentially, the specialized contract law, the relationship between the investors and the corporation, the stockholder and the corporation. I didn't make it up. It's not a partisan divide on the Supreme Court, not one of the issues that divides the Supreme Court based on, originally, intent versus a living constitution, or any of the very -- it's just accepted. It's part of why we have a very robust economy, because we don't subject corporations to multiple laws.

Does this mean that corporations are free from regulation? Delaware charters a corporation, or Oklahoma charters a corporation, other states don't regulate corporate activities? Absolutely not. The treatment of workers, for example, by any of the companies involved here, of employees that they employ in Oklahoma, is absolutely subject to the employment laws of Oklahoma. There is no notion that the Delaware -- the fact that the company is a Delaware corporation would override the application of employment laws to the operation of corporations; or, frankly, when foreign corporations,

1   which -- they do operate in Delaware.  One of our
2   largest corporations for a long time was a Maryland
3   corporation.  The idea that it could avoid our
4   environmental law, our employment laws -- no way.  But
5   in that area of internal affairs, when our largest
6   employer was a Maryland corporation, no one could come
7   into Chancery and say, "We want to apply Delaware
8   corporation law to the relationship between..." -- I
9   will use the name -- "...MBNA and its investors."
10  Can't do that, because that is what the internal
11  affairs doctrine is all about.  This the U.S. Supreme
12  Court, is talking about -- and every state.  And that
13  is what is interesting in the constituency statutes,
14  and why they are relevant here.  I read -- I do not --
15              This Court typically takes the -- if
16  there is a forum thing, you let the other forum
17  consider what interests are at stake.  I was taken by
18  the notion that the concern that my colleague in
19  Oklahoma raised was that the company had operations in
20  Oklahoma.  It's no doubt true.  But what is
21  interesting about the constituency statutes is even
22  when they apply, the states that have adopted them --
23  I'm not sure, and the parties can confirm on the
24  record whether Oklahoma even has such a thing.  None

of them purport to apply to corporations chartered by other states, because the notion in that situation is that you are allowed, frankly, to charter corporations where the primary purpose is of benefiting stockholders. Those corporations can't profit by illegal activity. In fact, under Delaware law -- just to make absolutely clear, Delaware law has a bottom line, which is corporations can only be chartered to do lawful business by lawful means. There are some academics out there who think you can make profits by violating the law, but you can't do it without turning the corporation into a -- something that it's not authorized to do under our law. That is the bottom line. Right? But within the law, it really is the case that the law of the chartering state governs whether the -- what obligations the directors owe to the stockholders, what are the formalities to accomplish transactions. Otherwise, you have a cacophony.

We have a situation where I'm looking at, here -- it's also important -- I will tell you this. It's, basically, contemporaneously-filed actions. The investors in companies do not place any reliance on where a company is headquartered, in terms

of the expectancies of the fiduciary duties owed to them.  As I said, MBNA was our largest private-sector employer for many years.  Anybody -- nobody invested in MBNA thinking Delaware corporate law protected them as an investor.  They had to rely on Maryland corporate law.

So when you have a situation where people are representing stockholders on, frankly, important issues, like the extent to which deal protections can be used to insulate a transaction that -- strategic transaction, and it's a jump ball in terms of filing speed, and when it's a representative action -- be one thing if there were two stockholders; they both lived in Oklahoma; and they both, you know -- I suppose maybe you could have it out, even though an Oklahoma court would be determining Delaware law.

In this situation, both the plaintiffs in Delaware and the plaintiffs in Oklahoma are purporting to represent a lot of people who aren't individually present before the Court and don't have their own lawyers.  In that circumstance, it's very clear that the most important factor, frankly, should be what will give people what they bargained for.  And just as I have --

1                    I will absolutely profess my total
2     belief that a judge in Oklahoma could do a far better
3     job than this Court determining any issue under
4     Oklahoma law on an expedited time frame, and that I
5     would defer in an Oklahoma minute, New York minute,
6     Texas minute, any other minute, to an Oklahoma court
7     in an expedited litigation that affects stockholders
8     of a Delaware corporation.
9                    I believe that, frankly, if we want to
10    respect each other, then the respect has to be given
11    to those who do something on a daily basis.  And I'm
12    not even saying to this Court.  One of the virtues of
13    our system, as you know, is if you believe something
14    has gone wrong at our trial court level, you can get
15    directly to our Supreme Court in a very fast time
16    period, and get an authoritative answer for everybody.
17    And given that I did not see -- I didn't see any
18    factor -- the defendants have rationally pointed out
19    reasons why, under Oklahoma public policy, this
20    shouldn't even be maintained as a class action.  And
21    when the factor was raised -- it's not even relevant
22    under Oklahoma corporate law.
23                   As I understand it, if Oklahoma
24    corporate law does not have a constituency statute,

1  the fact that the employees don't like the takeover or
2  the deal wouldn't even matter unless there was a
3  violation of their legal rights under an employment
4  law of the state of Oklahoma.  So given that, I don't
5  want to put the company in a bad position; I don't
6  want to put the investors in the company in a bad
7  position; but I also can be in a situation where the
8  investors of a company and -- and they are represented
9  in interesting ways in class actions like this by both
10 the plaintiffs' and defendants' side.  To the extent
11 the defendants are trying -- I understand the
12 plaintiffs' lawyers have a hard time indulging this,
13 but there may be some times when directors are
14 actually right, and when their position prevailing is
15 what is best for the investors.  Obviously, the
16 plaintiffs here disagree.  The Court -- why you
17 referee fiduciary litigation is precisely because it's
18 not certain whether that is the case.  And what is
19 important is, frankly, if everybody can get an
20 expedited adjudication in the forum that -- whose law
21 is at stake, and they can actually go to the final
22 arbiter, including the Supreme Court.  That is what
23 everybody bargained for.
24            When there is no reason -- like, this

1  case didn't get far along.  It's not like it sat
2  around for a year and is being processed in Oklahoma
3  and these folks were late on the plaintiffs' side
4  here.  There is every reason to believe this case can
5  go forth as conveniently in Delaware, and the Oklahoma
6  plaintiffs are invited to join in.  No --
7              I mentioned, I think, before in the
8  case, no preconceived notion about the leadership
9  structure.  I don't think the Delaware plaintiffs have
10 demonstrated any reluctance to work with people.  I'm
11 setting this down for August 10th.  I will reluctantly
12 allow the plaintiffs, if they want to move for
13 anything like class certification, or something like
14 that, on the same day, if we have to certify one class
15 and simply put in place an extreme order -- I don't
16 want to do that, but this is a situation -- I do not
17 like this.  I do not enjoy this.  But I have yet to
18 see anything that says why this case shouldn't be
19 tried in the state whose law is at stake.  I just
20 haven't seen anything.
21             And I want to say, just as a matter of
22 evenhandedness, there are instances that the parties
23 can cite, to the extent there is any concern, that
24 this is not anything having to do with Oklahoma.  I

1  have the greatest respect to the state of Oklahoma.  I
2  have deferred recently in a case.  This is an
3  interesting one to cite.  I had a case with a Delaware
4  LLC, and lawyers brought a motion for expedition.  It
5  was a Revlon case.  And they said the LLC's managers
6  are breaching their Revlon duties.  I deferred to the
7  Buckeye state.  Is that because I think they've got a
8  better football team than the Oklahoma Sooners?
9  Absolutely not.  It was an odd thing.  The LLC had --
10 you know, it's exercising contractual freedom.  The
11 way they exercised it was managing members of the LLC
12 owed the same fiduciary duties to the investors as
13 they owed to their own investors, and it was a
14 managing member that was a corporation.  Where was the
15 corporation headquartered?  I mean chartered, not
16 headquartered.  Ohio.
17             To determine whether they breached
18 their fiduciary duties under Delaware law, you had to
19 look to were they breaching their own fiduciary duties
20 under Ohio law, because frankly, their own investors
21 -- I am not -- I know that the Rock and Roll Hall of
22 Fame is in Ohio.  I now know that Lebron James figured
23 out something that Art Modell and Robert Irsay never
24 figured out, which is when you are going to do

something that is going to make you the object of ridicule, you reserve television time for it. I know those things about Ohio. I'm not an expert in Ohio corporate law. It was an expedited case. Ohio law was front and center. I deferred to Ohio.

To the extent there is concern that we defer to our colleagues on the east coast, the MBIA decision that I issued -- some of you may have been on the losing side on that. It was a case involving hundreds of -- I think billions of dollars in bond issuances were brought here by investors against a New York corporation. And it was a pretty darn sexy case, dealing with a good and bad insurer division. It was going to be governed by New York law under the indenture. And I abstained, and I wrote a decision, published decision, deferring to New York.

And so I just want to make clear I'm adhering to a fairly consistent principle here, which is when things are contemporaneously filed, and it's, particularly, a representative action, and what folks are primarily relying upon is the law of a particular state, then there is an easy tie breaker. We all ought to stay, in general, within our lanes.

Now, I am keeping an open mind. I

1  hate to put the defendants, in particular, in this
2  predicament, or the investors of the corporation.  But
3  frankly, if I do anything other than that, I just
4  create a situation where there are no rules of the
5  game, and that what you simply have is the state who
6  has the greatest interest in the litigation, because
7  it doesn't want to subject its corporations to -- and
8  more importantly, the investors in the corporation to
9  needlessly duplicative procedures, ends up deferring.
10 That isn't what investors bargained for.
11             And so that is what I'm going to do.
12 You can -- but I want to know tomorrow, on the record,
13 whether there is a constituency statute, and whether
14 it purports to apply to non-Oklahoma corporations.  I
15 suspect that even if the answer is that there is a
16 constituency statute, it's absolutely clear it only
17 applies to corporations that are chartered by the
18 state of Oklahoma.  When your own -- when the General
19 Assembly of a state makes that sort of policy
20 determination, it's a pretty clear one about the
21 extent to which the state is claiming an interest in a
22 matter.  And this is ultimately a fiduciary duty case
23 about, you know, whether the investors in a Delaware
24 chartered corporation are receiving the fiduciary care

1  and loyalty that they are entitled to from their
2  directors.
3            So again, with regret to the
4  defendants, I know that it's the last thing that you
5  wish to do, and I know this is an awkward situation.
6  I'm also happy at any time to talk to my colleague in
7  Oklahoma.  This is not at all a situation that I enjoy
8  or would like to persist.  But I really don't feel
9  that I have any other option than to do what I -- I
10 want to say there are grounds, in my view, to
11 expedite.  I think the defendants have been willing to
12 expedite it.  I don't really see any way out.  And I
13 would hope that we can get this worked out.  I invite
14 the Oklahoma plaintiffs.  I invite you to call them
15 afterwards, have them join the party, and we will have
16 one injunction proceeding.
17           So enjoy your train ride.
18           MR. LOWENTHAL:  Can I say one thing on
19 the record just a moment?  You have asked us to keep
20 you advised of developments.  I want the Court and
21 plaintiffs to know:  We were called yesterday evening
22 by the plaintiffs in the Federal Court in Oklahoma,
23 saying that they are going to move for an injunction
24 hearing, as well.  They haven't yet filed their

```
 1  papers.
 2              THE COURT:  I would then suggest that
 3  the transcript go to the federal judge.  I'm also
 4  happy to have a three-jurisdiction discussion with the
 5  federal judge from Oklahoma.
 6              Remember, I clerked on two federal
 7  courts.  I have great respect for them.  Remember,
 8  what is the word that every Chief Justice in recent
 9  memory has put on the federal courts?  Begins with an
10  O.  It should be on the thing.  The O in every Chief
11  Justice speech every year.  Mr. Friedlander, you
12  follow these things.
13              MR. FRIEDLANDER:  I hesitate.
14              THE COURT:  The overburdened federal
15  courts, which have sought to reduce diversity
16  jurisdiction, which have sought additional judicial
17  officers, which have sought pay for the burden -- I
18  believe overburdened -- if you put an "overburdened
19  federal judiciary" into Google, you will have almost
20  as many hits as -- maybe not Paris Hilton, but perhaps
21  Perez Hilton.
22              So, you know, federal courts have
23  traditionally been, frankly, very, very sensitive to
24  the dividing line, especially because the United
```

1 States Supreme Court law is so absolutely clear.
2          That is a new development, but you are
3 welcome to include them.  I'm happy to talk to anyone.
4 This is probably the least -- I like this sort of
5 situation even less than having a day filled with
6 twelve competing electronic discovery motions, but
7 it's part of the territory.
8          MR. LOWENTHAL:  If the plaintiffs can
9 move for class certification, we should work out a
10 briefing schedule?
11          THE COURT:  Why don't you all talk.
12 I'm going to leave here with the hope, if not the
13 expectation, that perhaps everyone, all sides, can
14 come together and concentrate their efforts and do
15 what is right for the investors of the corporation,
16 which is to have one hearing, get the issues
17 determined on the merits, and go from there.  That is,
18 people ought to be able to agree that that is right.
19          (Recess at 1:19 p.m.)
20                    - - -
21
22
23
24

1  CERTIFICATE

2       I, WILLIAM J. DAWSON, Official Court Reporter

3  of the Chancery Court, State of Delaware, do hereby

4  certify that the foregoing pages numbered 3 through 17

5  contain a true and correct transcription of the

6  proceedings as stenographically reported by me at the

7  hearing in the above cause before the Vice Chancellor

8  of the State of Delaware, on the date therein

9  indicated.

10      IN WITNESS WHEREOF I have hereunto set my hand

11 at Wilmington, this 9th day of July, 2010.

12

13

14         /s/William J. Dawson
              Official Court Reporter
15             of the Chancery Court
                 State of Delaware
16

17
   Certification Number: 187-PS
18 Expiration:  Permanent

19

20

21

22

23

24